IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| YVONNE F. BROWN, CALVIN JOHNSON, LEATRICE JOHNSON, UNIQUE BROWN, YVONNE O. BROWN, and ESTATE OF ANTHONY C. JOHNSON<br>　　　　　Plaintiffs,<br><br>　　　　v.<br><br>BOROUGH OF WILKINSBURG, WILKINSBURG POLICE DEPT., DET. JAMES CARRAWAY, DET. CHUCK KNOX, PTLM BRIAN SADLOW, SGT. MATTHEW MORRISON, PTLM MARK WILSON, DET. JINGLING of the Allegheny County Homicide Division, and DEPUTY CORONER DOMINIC of the Allegheny County Corner's Office, each in his individual and official capacity<br>　　　　　Defendants. | Civil Action No. 04-1695<br>Judge David S. Cercone<br>Magistrate Judge Lisa Pupo Lenihan |

### REPORT AND RECOMMENDATION

## I. RECOMMENDATION

It is respectfully recommended that the Motions to Dismiss filed by (1) Defendant Carraway on November 14, 2005, (2) Defendants Wilson, Knox, Morrison and Sadlow on January 6, 2006, and (3) Defendants Borough of Wilkinsburg and Wilkinsburg Police Department on January 6, 2006 be granted, as Plaintiffs' claims against those Defendants are time

barred. In addition, it is recommended that this Court dismiss Plaintiffs' claims against the remaining Defendants Jingling and Dominic, for failure to prosecute and failure to serve, respectively.

## II. REPORT

### A. Statement of Facts

As more fully set forth in Plaintiffs' *pro se* filings in this case, and Defendants' Motions to Dismiss, Plaintiffs Yvonne Brown and Calvin Johnson are the parents of Anthony C. Johnson ("Johnson"), a 36-year-old man who was fatally, and tragically, injured during an altercation in Wilkinsburg the evening of November 7, 2002. Their *pro se* Complaint indicates that Plaintiffs seek damages for wrongful death and mental and emotional distress. See Complaint at second of unnumbered pages. Plaintiffs allege denial of due process, see id., and violation of rights of equal protection, although it is not entirely clear from the Complaint whether each of these claims is directed at all or only some of the named Defendants. See id. at unnumbered pages 3-4.

On November 7, 2002, the Wilkinsburg police were summoned to the residence of Charlestina Hemphil ("Hemphil"), who reported an altercation between Johnson, described as her ex-boyfriend, and Gregory S. Lewis ("Lewis"), who was recently released from prison and directed by the police not to return to Hemphil's residence. The police observed Lewis outside the residence with blood on his shirt; glass from a broken mirror littering the hallway to the residence; and Johnson out of breath, bleeding from his head and "injured, and in need of medical attention." Complaint at ¶ 8; id. at ¶ 20 (citing to police investigation report). Plaintiffs

allege that Carraway and another Defendant refused to call an Emergency Medical Service, and that this delay in treatment contributed to or was the direct cause of Johnson's death on the scene within two hours thereafter. See id.  Other individual Defendants are alleged to have inappropriately left the scene without ascertaining Johnson's need for, or securing, prompt medical attention. See id.  However, medics were apparently called and arrived at some point, as the Police Report indicates Carray's notation that Johnson was "dead on the scene (even though medics continued to work and transport him)."  Plaintiff's December 6, 2005 Response to Motion to Dismiss at ¶ 8 (quoting Police Report).  Plaintiffs allege that the treatment accorded to Johnson was part of a pattern and practice of discrimination on the part of the Wilkinsburg Police Department, and a result of the Department's failure to properly train and supervise its employees. See Complaint at ¶¶ 11-18.  The Borough of Wilkinsburg is alleged to have similar liability for policy-making reasons.  See id. at ¶ 20.

 No arrests were made at the time or thereafter, even though Hemphil observed Lewis inflict an unprovoked beating on Johnson, who was blind in one eye and had only one lung.  See Complaint; see also Plaintiffs' December 6, 2005 Response to Motion to Dismiss.  Plaintiffs therefore assert that Det. Jingling (alternately referred to as "Yingling") of the Homicide Division violated equal protection rights by refusing to arrest Lewis at the direction of another officer and/or Lewis' probation officer.  Finally, because the Coroner concluded that Johnson's death was attributed to natural causes (*i.e.*, a heart attack), and not his altercation with Lewis, they allege that Deputy Coroner Dominic wrongfully failed to hold an open inquest into or otherwise appropriately investigate the circumstances and cause of Johnson's death (including failing to pursue identification of a second woman who may have been present during the altercation, and

3

failing to address Plaintiffs' questions regarding the blood noted around Johnson's spleen by a Western Pennsylvania Hospital physician ).  See id. at ¶¶ 21- 22; Plaintiffs' December 6, 2005 Response to Motion to Dismiss, "Argument".

At bottom, Plaintiffs  assert that Johnson was denied proper emergency medical treatment, and denied the dignity of a thorough investigation into his death, because of discrimination against him based on his race, and knowledge of or beliefs regarding his involvement in violence and illegal drug use.[1]  This Court considers such allegations with the seriousness which they deserve.

### B. Procedural History

As noted above, the incident underlying this action occurred on November 7, 2002. Plaintiffs' Motion to Proceed In Forma Pauperis was filed on November 8, 2004, more than two (2) full years later, and granted on November 18th, whereupon the Complaint was filed. Plaintiffs, who are proceeding *pro se*, made no attempt to serve the Complaint as required by the Federal Rules of Civil Procedure for more than six months.

On May 19, 2005, Plaintiffs filed a single handwritten page which the Court interpreted as a Motion Requesting Service by the U.S. Marshals and the Court, in response, provide

---

1. See Complaint at ¶ 21 (handwritten addition recounting that Defendant Morrison assumed Johnson's back scars were from gunshots, when they were from a prior surgery); id. (recounting that Det. Yingling reported that Johnson "was getting high with Lewis and socializing with him"); see also Plaintiffs' December 6, 2005 Response to Motion to Dismiss at ¶ 7 (alleging Wilkinsburg's "history of inappropriate actions toward person[s] of color when alcohol or drugs are involved").  Cf. Plaintiff's Complaint; Plaintiffs' December 6, 2005 Response to Motion to Dismiss, "Argument" (attesting that the autopsy report showed no cocaine or alcohol in Johnson's blood); Plaintiffs' January 17, 2006 Response to Motion to Dismiss (recounting Johnson's history of passive resistance to violence in prior altercations and mentioning a prior stabbing).

Plaintiffs with copies of the necessary forms and directions for securing service, with a completion deadline of August 8th.  See Order of July 18, 2005.

Plaintiffs sought legal representation, speaking with several different experienced attorneys, some of whom are known to this Court, and each of whom declined to accept the case. The Court denied Plaintiffs' request that it appoint counsel by Order of December 7, 2005.  See id. at 3-4 (explaining that, because volunteer lawyer time is a precious commodity, the court must carefully consider many factors, including the prospective merit and substantiality of the case, in determining whether to request represenation); id. at 4 (explaining that where civil rights violations alleged would entitle counsel to fees upon favorable verdicts, that numerous lawyers declined case cast doubt upon its merits).

The docket evidences Waiver of Service last Fall by Defendant Carraway, whose Motion to Dismiss was filed in November, 2005.  The docket also evidences Waiver of Service by Defendant Jingling.  Although service was not previously effected upon the other named Defendants, at the Court's request, Defendants Wilson, Knox, Morrison, Sandlow, and the Wilkinsburg Borough and Police Department, accepted service in December, 2005, and filed their Motions to Dismiss in January, 2006.  See *supra* at 1.

### C. Motion to Dismiss

In considering a motion to dismiss, the Court accepts as true the factual allegations of the Complaint, and draws all reasonable inferences in the light most favorable to the Plaintiffs.  See, *e.g.*, D.R. v. Middle Bucks Area Vocational Tech. Sch., 972 F.2d 1364, 1367 (3d Cir. 1992). The determination turns on whether it appears to a certainty that no relief could be granted under

any set of facts which could be proved.  See Evancko v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005).

In addition, the Court may adjudicate application of a statute of limitations on a motion to dismiss if the Complaint reveals on its face that it has not been timely filed.  See, e.g., Estrada v. Trager, 2002 WL 31053819, *2 (E.D. Pa. Sept. 10, 2002) (citing Bethel v. Jendoco Constr. Corp., 570 F.2d 1168, 1174 (3d Cir. 1978)).

**D.  Analysis**

1. Dismissal of Claims for Failure to Serve

As  no service has ever been made on Defendant Dominic, this Court recommends, in accordance with its Order of July 18, 2005, that Plaintiffs' claims against said Defendant be dismissed for failure to effect service, in accordance with Fed. R. Civ. P. 12(b)(5) and Rule 4(m). See Petrucelli v. Bohringer & Ratzinger, 46 F.3d 1298, 1307 (3d Cir. 1995).

2. Dismissal of Claims as Time Barred

The Court must also recommend dismissal of Plaintiffs' claims against the Wilkinsburg authorities and the individual Wilkinsburg Police officers as time barred.

More specifically, Plaintiffs' civil rights claims, under 42 U.S.C. § 1983, are governed by Pennsylania's two-year limitations period for personal injury actions.  See, e.g., Bougher v. Univ. of Pittsburgh, 882 F.2d 74 (3d Cir. 1989).  To the extent Plaintiffs bring survival claims on behalf of Johnson's Estate, for constitutional violations against him, the statute of limitations period runs from the time of the injuries to him, i.e., November 7, 2002.  And Plaintiffs' other claims, e.g., their wrongful death claims, are similarly barred by the two-year statute of limitations imposed by 42 Pa. C.S.A. § 5524(2).

The governing statutes provided Plaintiffs two years within which to seek counsel and to bring a court action.  Plaintiffs assert that they did not receive the autopsy report until nearly six (6) months after the incident, and that they encountered some delay in attempting to obtain the original Police Reports from the Wilkinsburg Police Department.  See Plaintiffs' December 6, 2005 Response to Motion to Dismiss, "Argument" (stating that Ms. Brown was initially given only a supplemental report, and made at least four trips to the Department in October and November, 2004).  However, neither these difficulties and delays, nor the understandable emotional difficulties of pressing forward with inquiry into the death of a son, can excuse Plaintiffs' more than two year failure to pursue judicial assistance in bringing closure to their November 7, 2002 loss.  Cf. Plaintiff's December 5, 2006 Response to Motion for Summary Judgment (reporting Plaintiffs' pursuant, for several months after the incident, of information, investigation and their civil rights complaints at the administrative levels).  Plaintiffs have made no allegations which would justify tolling of any statutory period on equitable or fraudulent concealment grounds.

Dismissal of these claims owing to Plaintiffs' failure to comply with the statutes of limitations may seem harsh, but such statutes exist as a necessary component of our legal system.  Justice "requires that the merits of a particular dispute be placed before the court in a timely fashion so that the defendant[s are] not forced to defend against stale claims."  McCurdy v. Amer. Bd. of Plastic Surgery, 157 F.3d 191, 197 (3d Cir. 1998).  In other words, parties have a duty to bring their complaints before the court in reasonably timely fashion in order that justice may be pursued while documents and witnesses remain available and memories are comparatively fresh.  Cf. National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 125 (2002).

It is the unfortunate nature of the search for truth that it may be seriously impaired by the passage of time.  And it is for this reason that the Courts must adhere to the legislatively-enacted statutes.

### 3. Additional Grounds for Dismissal

Because this Court concludes that the claims must be dismissed owing to Plaintiffs' failure to bring their claims within the prescribed time period, it need not address the the additional grounds for dismissal raised by Defendants.  It notes only that Defendants' observations regarding the Wilkinsburg Borough and Police Department's immunity from suit have merit, as does some if not all of their assertion that Plaintiffs failed to state a claim under 42 U.S.C. § 1983.

### 4. Dismissal of Claims Against Defendant Jingling for Failure to Prosecute

It is unclear from Plaintiffs' *pro se* Complaint whether Defendant Jingling's refusal to arrest Lewis, and the constitutional violations alleged to arise therefrom, occurred on or after November 7, 2002.  Thus, it is unclear whether Plaintiffs' claims against Defendant Jingling are time barred.  However, the Court has weighed each of the requisite factors and concluded that, as after a prolonged delay in service of the Complaint Plaintiffs have failed to pursue any claims against Jingling these past fifteen (15) months, and as all claims against the other Defendants should be dismissed, this Court should *sua sponte* dismiss the sole remaining claims against Defendant Jingling for failure to prosecute, in accordance with Fed. R. Civ. P. 41(b).  See Marshall v. Sielaff, 492 F.2d 917, 918 (3d Cir. 1974); Gagliardi v. Courter, 144 Fed. Appx. 267 (3d Cir. 2005) (finding no abuse of discretion where district court dismissed for failure to prosecute where plaintiff did not diligently pursue claims and causes of action against remaining

8

defendants were dismissed).  See also Poulis v. State Farm Fire and Casualty Co., 747 F.2d 863 (3d Cir. 1984) (listing factors to be considered in dismissing case under Rule 41(b), *i.e.*, personal responsibility, prejudice, history of dilatoriness, willfulness/badfaith, alternative sanctions, and meritoriousness of the defense).

### III.  CONCLUSION

The hard lives and senseless violence to which too many parents lose their children is a national scourge.  And it is a tragedy.  This Court sympathizes with Plaintiffs' grief, and anger and frustration at the death of their family member.  It is touched by Ms. Brown's shared memories of her son, and the goodness he manifested in his roles as son, grandson, uncle, and community member.  It must conclude, nonetheless, that Plaintiffs cannot now maintain a cause of action against these Defendants in federal court.  For the reasons set forth above, it is recommended that Defendants' Motions to Dismiss be granted.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates, the parties are allowed ten (10) days from the date of service to file objections to this report and recommendation.  Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

     /s/Lisa Pupo Lenihan
LISA PUPO LENIHAN
United States Magistrate Judge

Dated: February 28, 2006

cc: The Honorable David S. Cercone
 United States District Judge

 Yvonne Brown
 2633 Brackenridge St.
 Pittsburgh, Pa. 15219
 *Pro se* Plaintiff

 All Counsel of Record